[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 546 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 547 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 548 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 549 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 550 
This is an appeal from the denial of a petition for post-conviction relief. In 1978, the appellant was convicted and sentenced to death for the murders of Ricky Brune and Cheryl Moore, a capital offense defined at that time in Ala. Code 1975, § 13-11-2(a)(10) (repealed), which made first degree murder a capital offense if two or more people were intentionally killed by one or a series of acts.
On direct appeal, this Court reversed the appellant's conviction and remanded the cause for a new trial on authority of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382,65 L.Ed.2d 392 (1980). See Daniels v. State, 406 So.2d 1023 (Ala.Cr.App.), cert. denied, 406 So.2d 1024 (Ala. 1981). The United States Supreme Court vacated our decision and remanded the cause for further consideration in light of Hopper v. Evans,456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). See Alabama v.Daniels, 457 U.S. 1114, 102 S.Ct. 2920, 73 L.Ed.2d 1325 (1982).
Following the remand order of the United States Supreme Court, this Court determined that the appellant was not entitled to a new trial, and we affirmed his conviction. SeeDaniels v. State, 534 So.2d 628 (Ala.Cr.App. 1985), affirmed,534 So.2d 656 (Ala. 1986), cert. denied, 479 U.S. 1040,107 S.Ct. 898, 93 L.Ed.2d 850 (1987). However, we vacated the appellant's death sentence and "remand[ed] th[e] cause to the trial court with directions that the court correct its sentencing order . . . and, once again, decide the appropriate punishment by reweighing the proper aggravating circumstances against the proper mitigating circumstances." Daniels v. State, 534 So.2d at 656.
On return to remand, this Court affirmed the trial court's order sentencing the appellant to death. Daniels v. State,534 So.2d 658 (Ala.Cr.App. 1987), affirmed, 534 So.2d 664
(Ala. 1988), cert. denied, 488 U.S. 1051, 109 S.Ct. 884,102 L.Ed.2d 1007 (1989). The appellant's conviction and sentence became final, for purposes of direct appeal, on January 23, 1989, when the United States Supreme Court denied certiorari review.
The appellant filed his petition pursuant to Rule 32, A.R.Crim.P., on March 20, 1990, and *Page 551 
amended it on April 29, 1991. The circuit court held an evidentiary hearing on July 13-14, 1992, and denied all relief in an order dated September 23, 1993.
On this appeal from the denial of his Rule 32 petition, the appellant raises a number of issues that are procedurally barred from collateral review. He also raises issues concerning the ineffectiveness of counsel, which are not barred from review.
The circuit court correctly found that the appellant was procedurally barred, under to Rules 32.2(a)(2) and (4), A.R.Crim.P., from raising the following claims because they were raised or addressed at trial or on appeal:
(1) That evidence that was the fruit of an unlawful arrest was admitted against him at trial. See Daniels, 534 So.2d at 645-55.
(2) That the indictment was insufficient to charge an offense. See Daniels, 534 So.2d at 637-38.
(3) That the preclusion clause in the 1975 death penalty statute unconstitutionally prevented him from presenting evidence that he was guilty of a lesser included offense. SeeDaniels, 534 So.2d at 640-42.
(4) That his sentence of death was unconstitutionally imposed. See Daniels, 534 So.2d at 642-43 and at 660-61 (on return to remand).
The circuit court correctly determined that the following claims were precluded, under Rules 32.2(a)(2) and (5) because they were raised and addressed at trial and could have been but were not raised on appeal:
(1) That a prospective juror was improperly struck underWitherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770,20 L.Ed.2d 776 (1968), for opposition to the death penalty.
(2) That the State failed to disclose exculpatory material in violation of Giglio v. United States, 405 U.S. 150,92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
(3) That the appellant was denied the right to confrontation and cross-examination when hearsay testimony concerning statements made by Phillip Tomlin, a nontestifying codefendant, was admitted against him.
(4) That the misconduct of the prosecutor denied him due process of law.
(5) That there was a fatal variance between the indictment and the proof at trial.
(6) That the trial judge did not instruct the jury on all the elements of the charged offense.
The circuit court properly found that the following claims were precluded, under Rules 32.2(a)(3) and (5) because they could have been, but were not, raised and addressed at trial or on appeal:
(1) That the appellant was excluded from individual voir dire of the prospective jurors.
(2) That the State systematically struck blacks from the jury in violation of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824,13 L.Ed.2d 759 (1965).
(3) That the court wrongly charged the jury that "all witnesses are presumed to speak the truth."
(4) That the court's jury charge on reasonable doubt violated the principles of Cage v. Louisiana, 498 U.S. 39,111 S.Ct. 328, 112 L.Ed.2d 339 (1990).
(5) That the court's resentencing order violated Booth v.Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).
 I
The appellant was represented at trial by Tom Haas, Chris Galanos, and Neal Hanley. On appeal and at resentencing, he was represented by John Bertolotti. He raises ineffective assistance of counsel claims with respect to all of these attorneys. At the hearing on the Rule 32 petition, all four of the appellant's former lawyers testified.
Tom Haas testified that he was admitted to practice law in 1953. At the time of the appellant's capital murder trial, he had been practicing law in Mobile for 25 years. He estimated that 90% of his practice was devoted to criminal defense work. R. 8-9. Haas was retained to represent the appellant by the appellant's mother. R. 10. Galanos and Hanley, both of whom were then young attorneys *Page 552 
associated with Haas, assisted with the appellant's defense, but Haas was lead counsel and he made the strategic decisions in the case. R. 13.
Ineffective assistance of counsel claims are judged according to the standard set forth in Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffectiveness claim, the petitioner must establish both that his counsel's performance was deficient and that he was prejudiced as a result of the deficiency. Strickland,466 U.S. at 687, 104 S.Ct. at 2064. The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under "prevailing professional norms," was "reasonable considering all the circumstances."466 U.S. at 688, 104 S.Ct. at 2065.
Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall "outside the wide range of professionally competent assistance."466 U.S. at 690, 104 S.Ct. at 2066. Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.
The appellant argues that trial counsel's ineffectiveness is demonstrated by the following acts or omissions, and that appellate counsel's ineffectiveness is shown by his failure to raise the corresponding issues on appeal:
 (1) Counsel failed to move for a change of venue based on pretrial publicity.
At the Rule 32 hearing, Haas testified as follows:
 "Now I kept up, once I was hired in this case, with the publicity, both in the TV and on the radio. . . . Neal [Hanley] and Chris [Galanos] were watching it and other people were watching it and I was getting all of the papers and I did not feel — before I present something to a judge, I want to feel like I, at least, have a logical argument to make in support of it. I did not feel that the local media so inflamed the minds of the jurors in this area that the defendant, John Ronald Daniels, couldn't get a fair trial here. Had I thought so, I would have pursued that.
 ". . . . I don't just arbitrarily say, 'Let's get out of Mobile, Alabama, so we can get a fair trial,' because I am a believer in this county. . . . [S]ince I didn't see the type of pretrial publicity that would harm Mr. Daniels, I preferred to fight in a place where I like to fight and that's my answer to that." R. 90-91.
This Court has reviewed the transcript of the jury selection process. The record supports the circuit court's finding that "sixty jurors were called and only nineteen of those knew anything about [the case] and they were individually voir dired." R. 19. Those nineteen prospective jurors were only minimally aware of the facts of the case; each one indicated that he or she could judge the appellant's guilt strictly on the evidence presented from the witness stand. T.R. 164-86.[1] The circuit court's determination that "[t]here was no basis for [a change of venue] in this case," R. 19, is fully supported by the records of both the trial and the post-conviction proceedings. Because the appellant "has failed to show that a fair and impartial jury could not be had in his case" in Mobile County, he has failed to establish either that counsel's performance was deficient or that he was prejudiced by his trial or his appellate counsel's performance with regard to the change of venue issue. See Thompson v.State, 581 So.2d 1216, 1233 (Ala.Cr.App. 1991), cert. denied,502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992); Hallfordv. State, 629 So.2d 6, 14 (Ala.Cr.App. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). *Page 553 
 (2) Counsel failed to object to the appellant's exclusion from individual voir dire of the prospective jurors.
Individual voir dire of the nineteen jurors who had some knowledge of the case was conducted in a smaller courtroom apart from the main courtroom where the appellant's trial took place. The appellant claims that he was left in the main courtroom and was not brought to the smaller courtroom during individual voir dire. In support of this claim, the appellant offered his own affidavit and a motion for a new trial signed by defense counsel Chris Galanos on July 31, 1978.
Paragraph 3 of that motion alleges that "[t]he court erred in conducting portions of the individual voir dire of the prospective jurors outside the presence of the defendant." T.C.R. 53.[2] At the Rule 32 hearing, Galanos testified that he had no recollection of the facts underlying the allegation in paragraph 3 of the motion he filed fifteen years earlier. R. 218-21. Likewise, neither Haas, R. 98-99, nor Hanley, R. 103, had any memory of the facts underlying the appellant's claim of exclusion.
Mobile County Circuit Judge Ferrill D. McRae was the circuit judge who presided over the Rule 32 hearing and was also the trial judge at the appellant's 1978 capital murder trial. He determined that the claim of exclusion was without factual or legal merit because there was no evidence, other than the appellant's affidavit, to support the claim. C.R. 827. The circuit court found that "it would have been completely inconsistent with this Court's practice for the defendant not to have been present." C.R. 827. The judge explained:
 "When there is a group of people that indicate that they have any knowledge [about the case], . . . I always . . . segregate those so they can't talk to the other jurors. . . . [T]he purpose of these different courtrooms is to keep the jurors sequestered. . . . [T]here was . . . some question about whether or not Mr. Daniels was present at some stage of the voir dire. He . . . would have been wherever I was. If I was in courtroom 4 bringing these people from [courtroom] 6, he couldn't — it would have been impossible for him to be in 6 and 4 at the same time. He would have been wherever I was and wherever his attorney was." R. 105-06.
The circuit court's conclusion that there was no evidence in support of this claim other than the appellant's affidavit was correct. " 'Assertions of counsel in an unverified motion for new trial are bare allegations and cannot be considered as evidence or proof of the facts alleged.' " Daniels v. State,416 So.2d 760, 762 (Ala.Cr.App. 1982). See also Donahoo v.State, 505 So.2d 1067, 1075 (Ala.Cr.App. 1986).
The appellant has not shown "by a preponderance of the evidence the facts necessary to entitle [him] to relief" on this issue. Rule 32.3, A.R.Crim.P. Moreover, even if the appellant had been absent from the voir dire proceeding, he has been " 'unable to suggest or demonstrate any possibility of prejudice resulting from [his] absence.' " DeBruce v. State,651 So.2d 599, 620 (Ala.Cr.App. 1993) (capital defendant's absence from pre-trial motion hearing harmless error). "[E]ven improper exclusion of a defendant from a 'critical' portion of the trial does not automatically require reversal, if in the particular case the defendant's absence was harmless beyond a reasonable doubt." DeBruce, 651 So.2d at 620 (quoting Polizziv. United States, 550 F.2d 1133, 1138 (9th Cir. 1976)). Defense counsel Haas testified that in striking the jury he consulted the appellant, but that because "Mr. Daniels was not from Mobile, . . . [he did not] hav[e] much to say about who was struck and who wasn't." R. 50. Since none of the individually questioned prospective jurors demonstrated a knowledge of the case that required their being struck for cause, the appellant has not shown how his presence at the individual voir dire would have altered the composition of the jury or the result of his trial. The appellant claims that Judge McRae erred by *Page 554 
refusing to recuse himself from deciding this issue because the judge was a material witness with regard to whether the appellant was absent from voir dire. A material witness is one who " 'gives testimony going to some fact affecting the merits of the cause and about which no other witness might testify.' "Callahan v. State, 557 So.2d 1292, 1307-08 (Ala.Cr.App.) (emphasis in original), affirmed, 557 So.2d 1311 (Ala. 1989), cert. denied, 498 U.S. 881, 111 S.Ct. 216, 112 L.Ed.2d 176
(1990).
Judge McRae was not required to recuse himself because there were at least four other people (the appellant, Haas, Galanos, and Hanley) who could have and who, in fact, did become witnesses on this issue. Although three of those witnesses had no memory of the relevant events, they were, nevertheless, potential sources of evidence.
 (3) Counsel failed to object to an allegedly suggestive photographic identification procedure.
State's witness Randy Shanks identified the appellant's picture from a group of six photographs of white males with facial hair. The appellant complains that counsel should have challenged the array as suggestive because the appellant's was the only picture showing full facial hair. The trial record reveals that counsel examined the photographs and questioned the officer who compiled the array as follows:
 "Q. Well, you have got six pictures here and all of them have at least some facial hair. Is there any significance in that, Mr. Diegan?
 "A. Yes, we were trying to match as close as we could the picture that was brought to us." T.R. 462.
The record supports the conclusion that defense counsel Haas made a reasonable determination, based on his experience in trying criminal cases, that the identification procedure was not "so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." Ex parte Stout,547 So.2d 901, 904 (Ala. 1989). "[I]f an attorney is aware of a line of defense and makes a conscious decision to reject it, rather than failing to raise it simply because he was unaware it existed, it is more likely that the failure to raise the defense was reasonable." Gates v. Zant, 863 F.2d 1492, 1498
(11th Cir.), cert. denied, 493 U.S. 945, 110 S.Ct. 353,107 L.Ed.2d 340 (1989). Counsel was not ineffective for failing to challenge the identification procedure.
 (4) Counsel failed to object to hearsay statements establishing ownership of an automobile.
At trial, the State presented evidence tending to show that Brenda Tomlin Watson, the sister of codefendant Phillip Tomlin, was the owner of a car matching the description of the vehicle observed at the scene of the homicide and later discovered in the parking lot of the New Orleans airport. New Orleans detective Robert Poitevint testified that he "found the name Brenda Watson" on some papers in the glove compartment of the car. T.R. 331. F.B.I. Agent C. Gary Clem testified that he read the name "Brenda Watson" on the automobile's registration. T.R. 410. Danny Shanks, one of two brothers who testified against the appellant, testified that Phillip Tomlin told him that Tomlin "would be using his sister's car" to leave Mobile. T.R. 513. The defense did not object to any of this testimony. The appellant argues that counsel was ineffective for allowing the admission, without objection, of such damaging hearsay.
The answer to this argument is that the testimony of Poitevint and Clem was not hearsay. Poitevint and Clem did not testify as to any out-of-court statement offered for the truth of the matter asserted therein. See C. Gamble McElroy's AlabamaEvidence § 242.01 (4th ed. 1991). They merely stated what they had seen on a piece of paper inside an automobile. CompareTucker v. State, 355 So.2d 1145, 1147 (Ala.Cr.App. 1978) ("[t]he record shows that Officer Cooley personally looked at the identification number of the automobile . . . and thus satisfied the condition stated by the defendant's counsel," i.e., that it was "hearsay unless [the officer] read it off the car itself").
Shanks's testimony either was admissible under the co-conspirator exception to the hearsay rule, see discussion at Part II(3) *Page 555 
of this opinion, or if it was inadmissible, was harmless because it was cumulative of the testimony of Poitevint and Clem, see Spurgeon v. State, 560 So.2d 1116, 1121
(Ala.Cr.App. 1989).
 (5) Counsel did not move for a mistrial following the prosecutor's reference to the appellant as a "hit man."
When the prosecutor asked Randy Shanks whether codefendant Tomlin had referred to the appellant as a "hit man," T.R. 424, defense counsel immediately objected and the trial court sustained the objection. Then, outside the presence of the jury, the court heard argument, comprising nine pages of the trial transcript, on whether the alleged statement by Tomlin was a statement made in furtherance of a conspiracy. The court determined that it was not, and instructed the prosecutor to refrain from further use of the term "hit man." T.R. 426-35.
Thereafter, on cross-examination of the appellant, the prosecutor asked the appellant whether he had come to Mobile before the murders to "discuss [his] fee" for killing the victims. T.R. 700. Defense counsel objected, stating, "I think the fact that [the prosecutor] asked the question at all is improper and might even call for a mistrial." T.R. 700. The court sustained the objection and instructed the prosecutor not to "ask him anything about that." On further cross-examination, the prosecutor inquired of the appellant, "[You] didn't have any hatred toward that girl [Cheryl Moore] at all, did you? . . . Just a flat out business deal, wasn't it?" T.R. 712. Defense counsel objected and the trial court sustained the objection.
"A mistrial is a drastic and extreme measure which should be granted only when the prejudicial qualities of the comment cannot be eradicated by instruction or other action by the trial court." Hurst v. State, 469 So.2d 720, 724
(Ala.Cr.App. 1985). Counsel was not ineffective for failing to move for a mistrial because the prejudicial qualities of the remarks could have been cured by proper instruction. Moreover, "the appellant failed to prove that the trial judge would have granted a motion for mistrial, thus making the outcome different." Smelley v. State, 564 So.2d 74, 86 (Ala.Cr.App.), cert. denied, 564 So.2d 89 (Ala. 1990).
 (6) Counsel failed to object to the testimony of State's witnesses George Kinley and Boyd Lockhard.
George Kinley, an Eastern Airlines official who maintained records of flight arrivals and departures, testified that flight number 569 was scheduled to leave New Orleans for Houston at 8:30 p.m. on January 2, 1977, but that it was delayed and did not depart until 9:40 p.m. He testified that he was not familiar with the procedures for checked baggage, but stated, without objection, that in his opinion checked baggage was not subject to metal detection equipment.
The appellant claims that counsel's failure to object to Kinley's testimony permitted the jury "to consider improper evidence implying that [the appellant] could have taken Eastern Airlines flight 569 on January 2, 1977, and concealed a weapon in his baggage. Without that inference, the connection between [the appellant] and the crime is much weaker." Appellant's brief at 38.
Kinley's testimony was objectionable because he admitted that he was unfamiliar with the subject upon which he gave an opinion. However, " 'effectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made.' "Stringfellow v. State, 485 So.2d 1238, 1243 (Ala.Cr.App. 1986). "Even though there were several instances where counsel could have objected, 'that does not automatically mean that the [appellant] did not receive an adequate defense in the context of the constitutional right to counsel.' Ex parte Lawley,512 So.2d 1370, 1373 (Ala. 1987)." O'Neil v. State, 605 So.2d 1247,1250 (Ala.Cr.App. 1992). As this Court observed in Graham v.State, 593 So.2d 162, 166 (Ala.Cr.App. 1991):
 "The lawyer whose performance the appellant now attacks zealously and vigorously defended the appellant. No particular decision to object or not object, even if it is a bad decision, is in itself proof that counsel's performance fell below acceptable professional standards." *Page 556 
The jury had before it evidence that a .38 caliber pistol and a shotgun shell, consistent with the weapons used to shoot the victims, were found in the appellant's residence. The inference that the appellant could have concealed a weapon in his checked baggage on an airline flight added little to the strong circumstantial evidence against him. We refuse to hold that this one missed objection in the course of a long and vigorously-defended case constitutes deficient performance by defense counsel. Furthermore, the appellant has not shown, nor could he, that but for counsel's apparent oversight, the result of the trial would have been different.
Boyd Lockhard, an Eastern Airlines reservations manager, testified that the names of the appellant and Phillip Tomlin did not appear on the passenger list for flight 569 from New Orleans to Houston on January 2, 1977. Over defense counsel's objection, he testified that the appellant and Tomlin "could . . . have bought a ticket and their names not appeared on the list." T.R. 346. Also over objection, he testified that the appellant and Tomlin could have bought tickets under assumed names. T.R. 347.
We fail to see how defense counsel could have done more to protect his client's interests in this regard. Lockhard's testimony, while not helpful to the appellant, was certainly not highly damaging and did not approach the level of prejudice necessary to warrant a mistrial. Moreover, defense counsel reminded the jury of the speculative nature of Lockhard's conclusions during closing argument. There is no basis for a finding of ineffective assistance of counsel on this point.
 (7) Counsel did not move to strike references to polygraph testing or move for a mistrial following such references.
At the appellant's trial, State's witness Randy Shanks testified that he heard the appellant and Philip Tomlin discussing plans to murder Ricky Brune. When Randy Shanks testified that he "took a lie detector test," T.R. 441, defense counsel objected. The objection was sustained. Later, the prosecutor asked a police investigator whether he had given Charles Shanks, Randy Shanks's brother, a lie detector test. T.R. 613. Again, defense counsel objected and the objection was sustained. The appellant claims that counsel was ineffective because he did not move to strike the two references to polygraph testing or move for a mistrial following those references.
In Jones v. State, 439 So.2d 776 (Ala.Cr.App. 1983), a State's witness who — like the Shanks brothers in this case — provided highly incriminating evidence against the accused, testified that he had taken a polygraph test. Defense counsel did not object at the time the testimony was elicited, but moved for a mistrial the following day. The motion for mistrial was denied. This Court observed:
 "[R]esults of lie detector tests are not admissible in evidence. However, our attention is not called to any authority in which it is held that the injection into evidence of the results of lie detector tests requires or justifies a mistrial. We do not condone the injection of the matter into the case by the State, but we are not convinced that error prejudicial to defendant resulted from the court's denial of defendant's motion for a mistrial."
Jones v. State, 439 So.2d at 781.
In Logue v. State, 529 So.2d 1064 (Ala.Cr.App. 1988), a State's witness testified that she had taken a polygraph test. Defense counsel immediately objected and moved for a mistrial. Upholding the denial of the motion for mistrial, this Court cited Jones for the proposition that "the injection into evidence of the results of lie detector tests [does not] require or justif[y] a mistrial." Logue v. State, 529 So.2d at 1067.
Responding to the accused's argument in Jones that "[d]efense counsel's failure to object to [the polygraph] testimony . . . prejudiced the Defendant's case to the point that it was incurable by their motion the next day for a mistrial," 439 So.2d at 784, this Court stated:
 "[W]e are persuaded that defendant's trial counsel cannot justifiably be charged with inadequate or ineffective representation in what they did or omitted at the time [the witness who said he had taken a polygraph test] was being questioned by the State." *Page 557 
439 So.2d at 784-85. This Court was convinced that defense counsel's tardy motion for mistrial in Jones did not amount to ineffective representation, in part, because "counsel for defendant proceeded with strong cross-examination of the witness that was calculated to shake the confidence of the jury in the credibility of the witness." Jones v. State, 439 So.2d at 785. The same is true here. Defense counsel vigorously cross-examined the Shanks brothers and, in closing, argued that they were not worthy of belief. The appellant's Rule 32 counsel acknowledges that "the testimony of the Shanks brothers . . . was sharply attacked for lack of credibility." Appellant's brief at 40.
We hold that defense counsel's performance was not deficient in this regard. However, even if counsel's failure to move to strike the testimony or to request a mistrial could be considered inadequate, the appellant was not prejudiced to the extent that his trial was rendered fundamentally unfair by counsel's omission. The two references to polygraph testing in this case were "oblique at best, the results of the examination not being disclosed," Bracewell v. State, 407 So.2d 827, 840
(Ala.Cr.App.), remanded on other grounds, 407 So.2d 845
(Ala. 1979), reversed on other grounds, 407 So.2d 853
(Ala. 1981), vacated on other grounds, 457 U.S. 1114,102 S.Ct. 2920, 73 L.Ed.2d 1325 (1982), and it was not "certain and clear . . . that [the Shanks brothers] passed the [lie detector] test satisfactorily," Jones v. State, 439 So.2d at 785.
 (8) Counsel did not object to certain comments in the prosecutor's opening and closing arguments or move for a mistrial based on those comments.
The appellant complains of twelve specific instances of alleged improper argument by the prosecutor to which defense counsel either did not object or, if he objected, did not move for a mistrial.
We have examined each instance and we find that in five of the occurrences, defense counsel not only objected, but the trial court sustained the objections and gave prompt curative instructions, thus removing any basis for a mistrial. " ' "There is a prima facie presumption against error when the trial court immediately charges the jury to disregard the improper remarks." ' " Hagood v. State, 588 So.2d 526, 532
(Ala.Cr.App. 1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1943,118 L.Ed.2d 548 (1992).
We find that in one instance, defense counsel objected, the objection was sustained, and any prosecutorial misconduct was harmless in light of later developments in the trial. In another instance where defense counsel objected, the objection was properly overruled because the prosecutor's argument was a reply-in-kind to earlier comments by the defense. In three instances, defense counsel did not object and the prosecutor's comment was not improper. For two other occurrences, there was no objection, but the prosecutor's comments — while we do not approve of them — did not amount to reversible error.
Haas testified that he had no specific recollection as to why he did not move for a mistrial following some of the prosecutor's comments, but stated:
 "[i]t was probably because I would hope to preserve any error if there were any through a motion for a new trial. Because my experience with Judge McRae and as far as that was concerned, with most all judges, is they are very reluctant after a trial has been going on and has reached the stage of closing argument to grant a motion for a mistrial. They will, if, they feel it appropriate, sustain[ ] your objection and in appropriate cases, give instructions to the jury and sometimes that cures it and sometimes it doesn't. I haven't looked . . . if there was something like that in his [Assistant District Attorney Valeska's] closing, I'm sure it was in Chris [Galanos'] motion for a new trial and that would preserve the error, if it were an error. So whether you move for a mistrial or not, is not a conclusive determination of whether you protected the rights of your client." R. 71-72.
(a) In opening argument, the prosecutor referred, over objection by the defense, to several statements made by the appellant's wife. Those statements were the subject of a pretrial motion in limine on which *Page 558 
the trial court had not yet ruled. The appellant complains that the prosecutor's comments suggested that the appellant's wife had a duty to testify, and thereby violated her spousal privilege. While we do not condone the prosecutor's actions, any error was harmless because the appellant's wife did testify.
(b) A .38 caliber pistol found in a search of the appellant's residence was consistent with the type of weapon used to murder the victims. In closing argument, the prosecutor commented that although the appellant said the pistol belonged to someone else, the appellant "got fined for having it," T.R. 802-03. Apparently, this was a reference to an unrelated arrest of the appellant four years before the instant offense.
The State proved no connection between the pistol that was the subject of the 1973 arrest and the pistol used in the capital offense. "It has long been the rule in Alabama that, although counsel should be given considerable latitude in drawing reasonable inferences from the evidence, they may not argue as a fact that which is not supported by the evidence."Ex parte Washington, 507 So.2d 1360, 1361 (Ala. 1986). However, "[c]onsidering the district attorney's comment in the context of the trial setting and the closing arguments of both parties, we find that the improper comment . . . [was not] so egregious or obvious as to 'seriously affect the fairness and integrity of the judicial proceedings.' Ex parte Womack, 435 So.2d 766,769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436,78 L.Ed.2d 367 (1983)." Kuenzel v. State, 577 So.2d 474, 492
(Ala.Cr.App. 1990), affirmed, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). Therefore, even if counsel's failure to object to the prosecutor's comment constitutes deficient performance, the appellant has not established that counsel's omission resulted in the prejudice required under Strickland.
(c) In closing argument, the prosecutor stated, "[The appellant is] here because the Grand Jury charged him, because the evidence is here. If the evidence wasn't here, we'd already be gone. The case would be over." T.R. 756. The trial court sustained defense counsel's objection and instructed the jury to "completely disregard . . . just totally disregard" the remark. Defense counsel was not ineffective for failing to move for a mistrial because the court's curative instruction removed any need for such drastic action. " ' "There is a prima facie presumption against error when the trial court immediately charges the jury to disregard the improper remarks." ' "Hagood v. State, 588 So.2d at 532.
(d) The appellant contends that the prosecutor informed the jury that codefendant Phillip Tomlin had previously been convicted of a capital offense. In closing argument, the prosecutor asked, "Why did [the Shanks brothers] stick to their story on Daniels?" . . . "[T]hey already had one — They already had Phillip Wayne Tomlin." T.R. 739.
We find that this was not a comment on the fact that Tomlin had previously been convicted of the capital offense. It was a reply to the defense theory of the case that Charles Shanks, rather than the appellant, was Tomlin's partner in crime, and that Randy and Danny Shanks wrongly implicated the appellant in order to protect their brother. The prosecutor's rhetorical question asked why the Shanks brothers would need to have falsely implicated the appellant when they already had Tomlin to blame for the murder. " 'Counsel has a right to argue any reasonable inference from the evidence or lack of evidence . . . and to draw conclusions from the evidence based on their own reasoning.' " Kuenzel v. State, 577 So.2d at 493. Defense counsel had no ground upon which to object to this argument.
(e) The appellant asserts that the prosecutor "improperly vouched for the truthfulness of the state's witnesses and improperly placed his personal knowledge and integrity in issue, by arguing to the jury that he would be willing to accept the burden of finding the defendant guilty and sentencing [him] to death." Appellant's brief at 22. The prosecutor stated:
 "[Mr. Haas] is going to be up here ranting and raving about how are you going to sleep at night if you vote this man to the electric chair . . . The only thing you're *Page 559 
doing is what our law, our system of law says. The law has put the punishment on him if you find him guilty, not you, not you. But if any of you feel it's a tremendous burden I would gladly accept it for one simple reason. There was no reason to do what they did to the little girl [Cheryl Moore]." T.R. 746-47.
There was no objection by the defense.
The foregoing argument was neither vouching for the truthfulness of state witnesses nor putting the prosecutor's personal knowledge and integrity in issue. It was more akin to an argument that if the jurors felt uneasy about the requirement of the law to impose the death penalty under these facts, they should blame the prosecutor, who had no qualms about the punishment in this case. The argument is very similar to the one made in McNair v. State, [Ms. CR 90-1556, July 24, 1992] ___ So.2d ___ (Ala.Cr.App. 1992), in which the prosecutor stated:
 "[MR. VALESKA:] Ladies and gentlemen, they talk about the death penalty. When I took the oath of office of district attorney, I promised to enforce the laws. And the death penalty is constitutional. . . . "It's not you that's putting someone to death. It's me. I'm the State. And I have no problems with that, none whatsoever. . . ."
 "But I believe justice cries out in this case because of the heinous, atrocious, and cruel way in what they did to her calls for the death penalty.
 "And don't be afraid. I submit when your time comes, Jesus, God, whoever you believe in, will tell you you did the right thing. It's the State. And he'll say Valeska is the one who asked for the death penalty."
McNair v. State, ___ So.2d at ___ (emphasis omitted). While we did not condone the argument in McNair, and we do not condone it here, we do not believe that it constitutes reversible error or that counsel was ineffective for failing to object to the argument. The comment here, like the ones in McNair, was "aimed at diffusing the powerful suggestion [that the prosecutor anticipated would be] made by defense counsel's argument, that the moral significance of the verdict would hound the jurors 'from now until eternity.' " McNair, ___ So.2d at ___ (emphasis omitted).
(f) The appellant claims that counsel was ineffective for failing to move for a mistrial after the prosecutor argued that the appellant must be guilty because he hired the best defense lawyer in town. The prosecutor stated:
 "[The appellant] gets a lawyer and you will see Mr. Haas's ability. I don't think it's questioned in this town. Daniels has the best criminal lawyer in this town, some say in this state. Well, he needs him, let me tell you, he needs him." T.R. 747.
Immediately after that remark, defense counsel objected and asked the court to instruct the jury that the remark was improper. The trial court sustained the objection and told the jury, "Ladies and gentlemen of the jury, [defense counsel is] correct [to call the State's argument improper]. It makes no difference who the lawyers are. The law is the same for everybody." T.R. 747. The court's instruction was sufficient to cure any prejudice caused by the prosecutor's comment and defense counsel was not inadequate for failing to request further relief. Hagood v. State, 588 So.2d at 532; Harrell v.State, 608 So.2d 434, 436 (Ala.Cr.App. 1992).
(g) In closing argument, the prosecutor, referring to defense alibi witness Patricia DeGarmo, argued:
 "[I]f you believe a woman that would shack up with a married man wouldn't come in here and lie for him on the witness stand to keep him from going to the electric chair, then you turn [the appellant] loose." T.R. 799.
The prosecutor later referred to Ms. DeGarmo as a "whore." T.R. 800. When defense counsel objected, the trial court sustained and instructed the jury to disregard the remark. The court's action was sufficient to cure any prejudice caused by the comment and a mistrial was not warranted.
(h) The appellant contends that the prosecutor improperly commented on the absence of a Mr. and Mrs. Horton, whom the appellant testified he had visited in New *Page 560 
Orleans, as witnesses who could have substantiated the appellant's alibi.
There was no basis for a defense objection to this argument. "Reference to a particular witness's failure to testify is improper if the witness is equally available to both parties."Pacifico v. Jackson, 562 So.2d 174, 177 (Ala. 1990); accordHelton v. State, 433 So.2d 1186, 1189 (Ala.Cr.App. 1983). However, the prosecution may comment on the accused's failure to call a witness if that witness is not equally available to the State. See McMorris v. State, 394 So.2d 392, 402
(Ala.Cr.App. 1980), cert. denied, 394 So.2d 404 (Ala.), cert. denied, 452 U.S. 972, 101 S.Ct. 3127, 69 L.Ed.2d 983 (1981). If it appears that the accused has superior knowledge of the existence, identity, location and expected testimony of a possible alibi witness, then the witness is not deemed "equally available" to the State, and the prosecutor may legitimately comment on the absence of the witness. Miller v. State,431 So.2d 586, 592 (Ala.Cr.App. 1983). See also Morgan v. State,568 So.2d 427, 431 (Ala.Cr.App. 1990).
(i) The prosecutor made several references to the fact that the appellant spent one and one-half years in jail for this offense without ever telling the police about his alibi witnesses. The appellant claims that these comments were a violation of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240,49 L.Ed.2d 91 (1976).
The defense did not object to the first reference, T.R. 751, but when the second reference was made, counsel objected and asked the court for curative instructions. T.R. 804. The court sustained the objection and cautioned the jury that the appellant was "under no duty to talk." T.R. 805.
In view of the trial court's curative instruction after the second comment, defense counsel's failure to object to the first comment did not result in substantial prejudice to the appellant.
(j) At the end of his initial closing argument, and immediately before defense counsel was to present his summation, the prosecutor stated: "I guess one question I should have asked you [the jury] before I even started the case — is anybody out there easily conned, because that's what's going to happen to you for the next hour." T.R. 758. There was no objection to this remark.
While we do not approve of the prosecutor's remarks, we think they were valued by the jury at their true worth, as having been uttered in the "heat of debate," and "were not expected to become factors in the formation of the verdict." See Duren v.State, 590 So.2d 360, 364 (Ala.Cr.App. 1990), affirmed,590 So.2d 369 (Ala. 1991), cert. denied, 503 U.S. 974,112 S.Ct. 1594, 118 L.Ed.2d 310 (1992); Bankhead v. State, 585 So.2d 97,106 (Ala.Cr.App. 1989) remanded on other grounds, 585 So.2d 112
(Ala. 1991); Harris v. State, 539 So.2d 1117, 1123
(Ala.Cr.App. 1988).
Throughout the trial, and especially in closing arguments, opposing counsel traded jibes. Defense counsel called the prosecutor a "wizard" who would spin out a fantastic tale for the jurors, and the prosecutor told the jury that defense counsel was both the best lawyer in town and one who "rants and raves." We believe the jury discounted such exaggerated rhetoric by courtroom opponents and followed the court's instruction to decide the appellant's guilt based on the evidence alone. Therefore, we do not find that defense counsel was ineffective for failing to object to the prosecutor's remarks.
(k) The prosecutor told the jury that the appellant's case was the most important one he had ever tried. Defense counsel objected that the prosecutor was "expressing a personal opinion; it's improper." The court instructed the prosecutor not to "make any personal remarks" and told the jury to "disregard any personal remarks Mr. Valeska may have made." T.R. 813. Then the prosecutor asked the jury whether they could "imagine the terror that [the victim Cheryl Moore] went through. . . . with two killers sitting in the back seat pumping their shotgun just to make sure . . . that there was no eyewitness." T.R. 813. There was no objection to the last remark.
The prejudicial effect of the first remark was cured by the trial court's instruction to disregard. The second remark was in the "context of talking about circumstances that *Page 561 
existed at the time of the incident and was not improper."McNair v. State, ___ So.2d at ___ (quoting Miller v. State,194 Ga. App. 533, 390 S.E.2d 901, 902-03 (1990) (wherein the State's attorney argued, in a prosecution for burglary and rape, "When you are deliberating, when you are thinking about this case, try to put yourself in [the victim's] shoes, in her clothing, in her dressing, in her sleeping gown that morning, and what was the circumstance that she described").
(1) The appellant complains that the prosecutor argued that the Bible justifies capital punishment. Defense counsel objected to these remarks, T.R. 805-06, and the trial court overruled the objection.
The prosecutor's comments were a reply-in-kind to defense counsel's Biblical reference to the commandment "thou shalt not kill" and did not constitute reversible error. In Ex parteWaldrop, 459 So.2d 959, 962 (Ala. 1984), cert. denied,471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985), the Alabama Supreme Court reviewed a prosecutorial argument that "God . . . believed in capital punishment and you will find it many times throughout the Bible." The court observed:
 "If, as the Attorney General states in his brief, 'this argument was simply a statement that the jurors should not refuse to impose the death penalty in an appropriate case because of religious feelings,' then the prosecutor's comments were consistent with the duty imposed upon the jurors."
Ex parte Waldrop, 459 So.2d at 963.
 (9) Counsel failed to object to the court's jury instruction that "all witnesses are presumed to speak the truth."
Although the instruction was error, see Williams v. State,520 So.2d 179, 181 (Ala.Cr.App. 1987), the error was harmless because all witnesses, including the appellant who testified in his own behalf, benefitted from the erroneous presumption, seeWilliams v. State, 538 So.2d 1250, 1253 (Ala.Cr.App. 1988), and "the court's charge in its entirety stated the correct principles of law with regard to the credibility of witnesses,"Weaver v. State, 568 So.2d 309, 312 (Ala.Cr.App. 1989); accordTouart v. State, 562 So.2d 625, 627 (Ala.Cr.App. 1989). Because the erroneous instruction constituted harmless error, neither trial counsel's failure to object nor appellate counsel's failure to raise the issue on appeal prejudiced the appellant.
 (10) Counsel failed to object to the court's allegedly erroneous charge to the jury on reasonable doubt.
The appellant was tried for capital murder in 1978, twelve years before the United States Supreme Court decided Cage v.Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). Counsel's performance was not deficient for failing to predict a reinterpretation of the law concerning reasonable doubt. SeeHallford v. State, 629 So.2d at 11. Furthermore, the court's jury instruction on reasonable doubt did not violate the principles of Cage. See Gaskins v. McKellar, 500 U.S. 961,111 S.Ct. 2277, 114 L.Ed.2d 728 (1991) (Stevens, J., concurring in denial of certiorari review); Ex parte White, 587 So.2d 1236,1237 (Ala. 1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979,117 L.Ed.2d 142 (1992); McMillian v. State, 594 So.2d 1253,1282-83 (Ala.Cr.App. 1991), remanded on other grounds,594 So.2d 1288 (Ala. 1992).
 (11) Counsel failed to object to the prosecutor's practice of striking black veniremembers in violation of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
At the Rule 32 hearing, the appellant presented no evidence to support this allegation. This Court has reviewed the trial record. It "does not disclose a prima facie violation ofSwain. . . . There is no evidence in the record that the State repeatedly engaged in the systematic exclusion of blacks from the jury . . . in case after case in violation of Swain v.Alabama." Cochran v. State, 548 So.2d 1062, 1069 (Ala.Cr.App.), cert. denied, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208
(1989). Counsel was not ineffective for failing to raise this issue at trial or on appeal.
 (12) Counsel was ineffective because, under the 1975 death penalty statute he could not propose a theory or introduce evidence indicating that the appellant might have been guilty of a lesser included offense.
The appellant argues that the preclusion clause of the 1975 death penalty statute, *Page 562 
which provided that capital offenses "shall not include any lesser offenses," § 13A-5-31(a), Ala. Code 1975, "constrained counsel to provide less than effective assistance . . . by limiting dramatically the scope of defense strategies that defense counsel could develop and pursue." Appellant's brief at 82. The appellant suggests that, but for the preclusion clause, his counsel might have developed the theory that the appellant was guilty of intentional murder of only one of the victims, rather than capital murder based on the intentional murder of two or more persons by one or a series of acts. A similar argument was rejected in Bracewell v. State, 475 So.2d 616, 619
(Ala.Cr.App. 1984).
Moreover, the following testimony at the Rule 32 hearing makes it clear that the appellant's defense strategy was not limited by the preclusion clause; it was dictated by the appellant's insistence on his complete innocence of any offense and his claim that he was in Houston at the time of the Mobile, Alabama, murders:
 "Q. [By the appellant's Rule 32 counsel]: Now, in part, based on consultation with Mr. Daniels and, in part based on your judgment and I assume the advice of Mr. Galanos and Mr. Hanley, you, in fact, chose an alibi defense here to present, correct?
 "A. [By trial counsel Haas]: Now, I can't agree with the way you phrased that. I don't choose alibi defenses. I don't choose any defense. When the client comes into my office, the facts come with him. I can't change the facts. I didn't file a motion for a new set of facts. Mr. Daniels stated that he was not in this city at the time and place that these two young people were killed. He gave me substantial evidence to support that defense and as his counsel, as is my duty, I did my best to present that defense, yes, sir." R. 21.
 "Q. Had Alabama law permitted it, Mr. Haas, would you have considered here a defense that Mr. Daniels participated in a conspiracy only to kill [one of the victims]?
 "A. Had Alabama law permitted it. Well, if you will add one other little factor, if Mr. Daniels had conceded it or requested it or in some fashion after discussion with me, [said] go ahead and go at it, but Mr. Daniels has . . . of all the times that I had communication with him, he denied his guilt, period, denied it in tot[o] and again, I say to you, how can I then argue that he did it but it wasn't capital." R. 44-45.
 II
The appellant claims that his appellate counsel was ineffective because he failed to raise the following additional claims on direct appeal:
 (1) That a prospective juror was improperly struck for his opposition to the death penalty.
Counsel was not ineffective for failing to raise this issue on appeal because the issue is without merit. The prospective juror answered with an unequivocal "yes" to the following question posed by the court: "Regardless of the circumstances or facts, you would simply vote — or you could not vote guilty and fix death by electrocution. Is that correct?" T.R. 148-49. It is clear that there was no reasonable basis, underWitherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770,20 L.Ed.2d 776 (1968), and Wainwright v. Witt, 469 U.S. 412, 424,105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), to dispute the challenge for cause to this juror.
 (2) That the State failed to disclose exculpatory material to the appellant.
The appellant's Rule 32 petition alleged, "on information and belief," that the State failed to reveal oral or written agreements with three prosecution witnesses. Because he did not present any evidence in support of this allegation, the appellant has failed to show "the facts necessary to entitle [him] to relief" on this issue. Rule 32.3, A.R.Crim.P. Furthermore, Mobile Police Detective Cookie Estes, the chief investigating *Page 563 
officer on the case, testified at the Rule 32 hearing that there was no "agreement to do anything for any witness in exchange for their testimony at trial." R. 331.
The appellant also claims that the State withheld exculpatory information in the form of a statement made by a William Taylor to Detective Estes wherein Taylor related that he had seen Charles Shanks, who was carrying a shotgun, with Phillip Tomlin shortly after the murders. Although that statement tended to support the defense theory that Charles Shanks was involved in the homicides, the statement did not constitute exculpatory material under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), because it did not negate the appellant's participation in the crime. Compare United Statesv. Comosona, 848 F.2d 1110, 1115 (10th Cir. 1988) (no Brady
violation in failure to disclose statements with mere inferential value of placing blame of death on sole eyewitness to murder).
Moreover, the State did not withhold the statement from the appellant. Defense counsel questioned Detective Estes about the statement at trial and Estes told the jury what Taylor had told him. T.R. 609-11. Appellate counsel was not ineffective for failing to raise the issue of the alleged non-disclosure of this statement when it is clear that the statement was not only disclosed to the defense but was also related to the jury. Compare United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988) (no Brady violation in failure to disclose documents until close of government's case-in-chief because documents were still of substantial value to defense and were used at trial).
 (3) That the appellant was denied the right to confrontation and cross-examination when hearsay testimony concerning statements made by Tomlin, a nontestifying codefendant, was admitted against him.
The statements made by Tomlin in the appellant's presence were admissible against the appellant under the co-conspirator exception to the hearsay rule. See Deutcsh v. State,610 So.2d 1212, 1222-23 (Ala.Cr.App. 1992); Parker v. State,587 So.2d 1072, 1092 (Ala.Cr.App. 1991), affirmed, 610 So.2d 1181
(Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 3053,125 L.Ed.2d 737 (1993).
If there is a firmly rooted exception to the hearsay rule under which evidence is admissible, then the Confrontation Clause presents no further barrier to the admission of the evidence, and the witness whose out-of-court testimony is offered does not have to be proven unavailable. White v.Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). The co-conspirator exception to the hearsay rule is a "long-established and well recognized rule of state law."Dutton v. Evans, 400 U.S. 74, 83 n. 15, 91 S.Ct. 210, 217 
n. 15, 27 L.Ed.2d 213 (1970). The statement of a co-conspirator admitted under a state exception to the hearsay rule does not violate the confrontation clause. Id. The out-of-court statements of a nontestifying co-conspirator may be admitted, without showing the unavailability of the co-conspirator and without violating the Confrontation Clause. United States v.Inadi, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). Counsel's failure to raise this issue on appeal did not constitute deficient performance.
 (4) That there was a fatal variance between the indictment and the proof at trial.
Counsel was not ineffective for failing to raise on appeal the issue of whether there was a variance between the indictment, which did not allege complicity or conspiracy, and the State's proof at trial, which tended to show the appellant was an "aider and abettor, accessory, accomplice or conspirator" of codefendant Philip Tomlin. Appellant's brief at 91. There was no variance.
 "The distinction between an accessory before the fact and a principal, between principals in the first and second degrees, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals." *Page 564 
Ala. Code 1975 § 13-9-1 (repealed) (emphasis added). Cf. Boldinv. State, 585 So.2d 218, 220 (Ala.Cr.App. 1991) (" 'Alabama Code § 13A-2-23 (1975) continues the long recognized abolition of the distinction between principals and accessories in Alabama' ").
 (5) That the trial judge did not instruct the jury on all the elements of the charged offense.
The appellant contends that counsel was ineffective for failing to raise on appeal the argument that the trial court's oral charge did not instruct the jury that, in order to find the appellant guilty of the capital offense, it must find that he had a "particularized intent to kill" both of the victims. The appellant points out that codefendant Tomlin's conviction was reversed because of the trial court's failure to instruct on the issue of particularized intent, see Tomlin v. State,591 So.2d 550 (Ala.Cr.App. 1991), and he complains that the jury charge at his trial suffered from the same defect.
In Tomlin's trial, the court gave the following charge, which did not even mention the concept of "intent":
 "The fourth and last basic component of the capital offense charged in Count I of the indictment is the allegation that this defendant, Phillip Wayne Tomlin, committed first degree murder of both Richard Brune and Cheryl Moore. First degree murder is more than simple killing. I will define for you first degree murder because the Defendant is not guilty of the capital offense charged in the indictment unless the State has proven beyond a reasonable doubt and to a moral certainty that he committed first degree murder of both Richard Brune and Cheryl Moore."
Tomlin v. State, 591 So.2d at 557. Furthermore, in response to a question from the jury of whether "a person, although he maybe did not pull the trigger, takes part in a crime, . . . is just as guilty as the person that pulled the trigger," the trial court replied, "That is exactly what I said." Tomlin v.State, 591 So.2d at 557. Observing that the trial judge's reply was "an obvious misstatement of the law" because it failed to take into account the requirement of a particularized intent, this Court reversed Tomlin's conviction.
In contrast, the trial court specifically informed the jury in the appellant's trial that, in order to convict him of the capital offense, they must find that he intentionally killed the victims. The court charged the jury in the appellant's trial as follows:
 "Now, what specifically must the State prove beyond a reasonable doubt and to a moral certainty? There is not a whole lot to explain to you as to the elements that must be proved of this offense as set out in this indictment, as it goes to you for your consideration, for the language of this statute which I have read to you which, again, is murder or capital murder when two or more human beings are intentionally killed by one or a series of acts. And, I will state, you will note that the Act says the killing must have been intentionally done by the Defendant. That is, the Defendant must have intentionally killed the victims as opposed to accidentally or unintentionally. That is an intent to do something, do it because the person intended to do it, intends the results. That is, the death of his victims.
You, lady and gentlemen of the jury, determine the intent from all the surrounding facts and circumstances in this case. Intent is a mental element or operation. There is no X-ray machine to look into someone's mind. Again, look to all the surrounding facts and circumstances of the case to determine if that specific intent is present in this particular case. If it is not, then your verdict would be not guilty." TR. 820-21 (emphasis added).
On appeal, counsel raised the issue of the trial court's "failure to instruct on the elements of willfulness, maliciousness, premeditation and deliberation," and this Court addressed that issue in Daniels v. State, 534 So.2d at 655. To the extent that that issue did not subsume the issue of whether the appellant had a "particularized intent to kill," we find that appellate counsel was not ineffective for failing to raise an issue that we have determined was insubstantial. The trial judge "plainly charged the jury that it had to find a 'real and specific' intent on the part of *Page 565 
the appellant in order to invoke the capital statute."Sockwell v. State, [Ms. CR-89-0225, December 30, 1993] ___ So.2d ___, ___ (Ala.Cr.App. 1993).
 (6) The court's resentencing order violated Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440
(1987).
This Court has examined the circuit court's resentencing order and we can find no consideration of improper victim impact evidence such as that condemned by Booth. See Daniels v.State, 534 So.2d at 661-64. However, even if counsel's performance in failing to raise a Booth violation had been deficient, the appellant suffered no prejudice because Booth
was later overruled by Payne v. Tennessee, 501 U.S. 808,111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). See State v. Tarver,629 So.2d 14, 18-19 (Ala.Cr.App. 1993).
In Lockhart v. Fretwell, ___ U.S. ___, 113 S.Ct. 838,122 L.Ed.2d 180 (1993), the United States Supreme Court held that counsel's failure to raise an objection that would have been supported by a case that was later overruled does not constitute "prejudice" under Strickland. To show prejudice, a defendant must show that counsel's errors were so serious that they rendered the defendant's trial unfair or unreliable, not merely that the outcome would have been different. Unfairness or unreliability does not result unless counsel's ineffectiveness deprives the defendant of a substantive or procedural right to which the law entitles him at the time the ineffective assistance of counsel claim is being reviewed.Lockhart, ___ U.S. at ___, 113 S.Ct. at 844. Unlike the performance component of Strickland, the prejudice component isnot determined under the law existing at the time of the trial.Lockhart, ___ U.S. ___, 113 S.Ct. at 844.
 III
The appellant claims that he was denied the effective assistance of counsel at sentencing because his attorneys at the original sentencing proceeding and at resentencing failed to conduct an adequate investigation into his family background and his mental health history. The appellant maintains that such an investigation would have revealed substantial evidence in mitigation of his crime which could have been developed and presented by trial counsel at initial sentencing, and by appellate counsel at resentencing after this Court's remand order.
After the appellant's conviction in April 1978, the circuit court held a mitigation hearing on June 24, 1979. At that proceeding, the appellant was represented by Tom Haas. Gloria Hebert, the appellant's mother, was the only witness to testify.
Mrs. Hebert testified that the appellant had worked hard since the age of 14 and that he was devoted to his young daughter. She asked the circuit court to show mercy on her son and not to impose the death penalty. She testified that she had exhausted her funds for the appellant's defense at trial and that she could not afford to bring witnesses from Texas for the sentencing hearing. She stated that had she been able to pay for witnesses' travel expenses, she would have brought people who had worked with the appellant and who knew that he was a conscientious employee and a good person.
Following Mrs. Hebert's testimony, defense counsel argued that the court should not find the existence of the aggravating circumstance that the capital offense was heinous, atrocious and cruel because the two victims appeared to have died without prolonged suffering.
On August 7, 1979, the circuit court entered its original order sentencing the appellant to death. On direct appeal, this Court stated:
 "Although Daniels does not contest the propriety of the trial court's written findings of fact pursuant to § 13-11-4, upon our review, we find the order inadequate for the following reasons. First, it does not contain a statement of the 'findings of fact from the trial' as required by § 13-11-4. Secondly, the court did not enter proper written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13-11-6. Essentially, the same errors were present in co-defendant Tomlin's sentencing order; thus we direct the trial court to our instructions in Tomlin, 443 So.2d [47, 58-59 *Page 566 
(Ala.Cr.App. 1979), affirmed, 443 So.2d 59
(Ala. 1983), cert. denied, 466 U.S. 954, 104 S.Ct. 2160, 80 L.Ed.2d 545 (1984)]. Thirdly, in regard to the specific findings concerning the presence or negation of the enumerated mitigating circumstances, we note that the court made no specific finding as to § 13-11-7(7) and that the court failed to determine whether Daniels had a significant history of prior criminal activity, even though the court concluded that Daniels did not have a 'long history.' In addition, in regard to the determination of § 13-11-7(4), we direct the court's attention to our Supreme Court's observations in [Ex parte] Tomlin, 443 So.2d at 64.
 ". . . [D]ue to the deficiencies in the sentencing order, we remand this cause to the trial court with directions that the court correct its sentencing order in accordance with our observations and, once again, decide the appropriate punishment by reweighing the proper aggravating circumstances against the proper mitigating circumstances. The court's new sentencing order should be promptly transmitted to this Court."
Daniels v. State, 534 So.2d at 655-56 (footnote omitted).
This Court's order remanding the cause was released on November 26, 1985. John Bertolotti, who had previously assisted Haas with the direct appeal as early as 1982, had sole responsibility for the appellant's representation by that time. R. 177, 179.
The resentencing proceeding occurred on June 4, 1987. At that proceeding, the assistant district attorney stated that the case had been remanded with directions for the circuit court to "correct its sentencing order." The circuit court acknowledged that "correction of the sentencing order" was the purpose of the proceeding, but stated that all parties were present before the court because Mr. Bertolotti wanted to "put something in the record." In response, Bertolotti stated:
 "I believe the case has been remanded for something more than merely correction of the sentencing order . . . . In fact, this opinion of the Court of Criminal Appeals states that they've remanded this cause to the trial court, quote, 'with directions that the court correct its sentencing order in accordance with our observations and, once again, decide the appropriate punishment by reweighing the proper aggravating circumstances against the proper mitigating circumstances.' Remand Transcript at 4-5.
The circuit court commented, "Of course, which, you know, I've heard the evidence and I do not think [the Court of Criminal Appeals was] saying any more than I said initially, but if you're of that opinion, you know, you put anything you wish in the record." Remand Transcript at 5.
Bertolotti responded, "All right. Well, at this time the defendant is not going to introduce any new evidence in the record." Remand Transcript at 5. Bertolotti then argued that the facts and the law did not support a finding that the offense was "especially heinous, atrocious or cruel," after which the court inquired, "Anything else?" and Bertolotti responded, "No." The court said, "Well, I want you to bring up anything you want to bring up at this time." Remand Transcript at 7. Bertolotti presented nothing further.
In its sentencing order on remand, the circuit court found that two aggravating circumstances were present: that the appellant intentionally killed two human beings by one or a series of acts, and that the capital offense was especially heinous, atrocious, or cruel. See Daniels v. State, 534 So.2d at 662 (on return to remand).
The circuit court found that the § 13-11-7(1) statutory mitigating circumstance, that Daniels had no significant history of prior criminal activity, was present. Concerning non-statutory mitigating circumstances, the court determined the following:
 "The court finds that before the time of the capital offense Daniels had a history of gainful employment; he was married and had a child, a young daughter, to whom he was devoted; Daniels' relationship with his mother reflects favorably upon him since it is apparent to the court that she was devoted to him; and Daniels was also close to his step-sister. He was functioning well as a husband and father at the time of the *Page 567 
capital offense. In finding mitigating circumstances this Court also considers the fact that had his financial resources permitted, Daniels could have brought to the sentencing hearing people who had known him for a considerable period of time, some of whom had worked with him, who would have testified favorably about his good work habits, and who would have testified that those who knew and worked with Daniels thought he had a good general reputation, and thought he was a good person. In fairness to Daniels, the court considers what those witnesses would have testified to the same as if they had so testified."
Daniels v. State, 534 So.2d at 663 (on return to remand).
At the Rule 32 hearing, the appellant presented the testimony of Dr. Charles Herlihy, a Mobile psychiatrist, who had interviewed members of the appellant's family, reviewed the appellant's school, military, and mental health records, and conducted a psychiatric evaluation of the appellant. Dr. Herlihy testified that the appellant had had a traumatic childhood. According to Dr. Herlihy, the appellant was abandoned by his biological father, who left home before the appellant was born, emotionally rejected by his mother, who remarried five or six times during the appellant's youth, and was shunned by a series of stepfathers. At age six, the appellant witnessed the death of his grandfather, the only stable adult figure in his life.
Dr. Herlihy stated that the appellant's adolescence was marked by depression and substance abuse. At age sixteen, following three suicide attempts, the appellant was admitted to a psychiatric hospital in Galveston, Texas. Dr. Herlihy gave his opinion that the hospitalization was not beneficial, but was, in fact, harmful to the appellant because he was treated with adult patients, he witnessed the administration of electroconvulsive (shock) therapy to another patient, he was misdiagnosed as psychotic, and he was released after eight days.
According to Dr. Herlihy, the appellant left school in the eleventh grade. He later joined the United States Navy, but was discharged as psychologically unfit after only two weeks. The appellant's substance abuse and depression continued into his young adulthood. During that time, the appellant suffered from what Dr. Herlihy called "Dysthymic Disorder," which the psychiatrist described as characterized by "chronic depression . . . erratic moods punctuated by frequent sad feelings and . . . feelings of inadequacy and low self-esteem, maybe erratic interpersonal relationships, sleep disturbance, suicidal thoughts . . . as well as a Mixed Personality Disorder." R. 263.
During the appellant's twenties, he had a number of stormy marriages, one of which resulted in the birth of his daughter, Vanette. After Vanette's birth the appellant made an effort to stop using drugs.
Dr. Herlihy testified that the appellant's adjustment to prison life has been good. In the sixteen years he has been on death row, the appellant has received only a few minor disciplinaries, has continued his education, and has become the death row barber. The appellant's relationship with his daughter is stable and loving; his daughter feels closer to him than she does to her mother. Dr. Herlihy indicated that the appellant is a positive influence on his daughter.
The appellant also presented the deposition testimony of Dennis Balske, an attorney specializing in the defense of capital cases. Balske stated that he had read the transcript of the appellant's trial and two sentencing proceedings; he had examined the records concerning the appellant's psychiatric hospitalization as a teenager in Galveston; he had reviewed the appellant's school and military records; and he had spoken with the appellant's mother, sister and daughter, and had conferred with Dr. Herlihy.
Based on his review of the foregoing sources, Balske gave his opinion that the appellant had not received effective assistance of counsel at his resentencing proceeding in June 1987. R. 454-61. Balske stated that, in his opinion, it was unreasonable for Bertolotti not to have (1) interviewed the appellant, (2) conducted a background investigation into the appellant's family and mental health history, (3) requested funds to hire a sociological or psychological expert, and (4) *Page 568 
conferred with that expert to prepare further evidence to be presented in mitigation at resentencing.
Balske also gave his opinion that the appellant suffered prejudice because of Bertolotti's deficient performance at resentencing hearing. He stated that, in his opinion, had Bertolotti taken the steps outlined above, the outcome of the resentencing proceeding would have been different. Balske gave two reasons for that conclusion:
 "One is that this [the evidence Balske reviewed] is really substantial explanatory mitigation. And the second would be that looking at the aggravating side of the scale, this wasn't a particularly, quote, 'aggravated murder' as aggravated murders go. What I mean by that is that this wasn't one that involved rape or torture or anything of that sort. Not to downplay the brutality of any murder, but when we're talking about capital murders and comparing this to other capital murders, this wasn't an especially gruesome murder so that the aggravating side of the scale, though it certainly had some weight — it had two statutory factors; that it was a double murder, which is also what made it capital murder in the first place, plus the judge found it heinous, atrocious and cruel. Those two aggravators are hardly insurmountable. When you take this substantial explanatory mitigation and balance it against it, a reasonable, open-minded factfinder, I believe, would have been likely to have found on the side of mitigation rather than aggravation." R. 462-63.
Balske explained that by "substantial" explanatory mitigating evidence he meant that
 "from the number of cases [he had] been involved in that this is as much or more mitigation than you would expect to find that would be persuasive; that . . . this is the stuff of which a good mitigation presentation is based and upon which there's a very good possibility or probability that you're going to be able to convince the factfinder that life is the most appropriate punishment when you've got this much mitigation. This, comparatively speaking, is a lot." R. 464-65.
At the Rule 32 hearing, Bertolotti testified that he made no effort to obtain the appellant's school, medical, military, or prison records. He said that he did not interview the appellant or the appellant's family members and that he did not request the appointment of a mental health expert to evaluate the appellant. He stated that he made no "effort . . . to gather any mitigating evidence," R. 195, for two reasons. He testified, first that the remand order by the Court of Criminal Appeals, "did not by its terms, countenance a completely new sentence hearing," R. 196, and second, that he "did not feel that adding anything on the mitigating side showed any substantial chance of helping Mr. Daniels. [He] felt the best chance of helping him involved attacking the aggravating circumstances." R. 196. Bertolotti also stated that, in his opinion, "Judge McRae had . . . been fairly generous in finding mitigating circumstances in Mr. Daniel's case." R. 199.
In determining whether Haas was ineffective at original sentencing, and whether Bertolotti was ineffective at the resentencing, we recognize that the
 "two-pronged Strickland analysis applies whether the ineffectiveness complained of occurred in the defendant's trial or in a subsequent adversarial sentencing proceeding. However, in a challenge to the imposition of a death sentence, the prejudice prong of the Strickland inquiry focuses on whether 'the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.' "
Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir. 1992) (citation omitted), cert. denied, ___ U.S. ___, 113 S.Ct. 1306,122 L.Ed.2d 695 (1993). We also recognize that
 "[w]hile '[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness,' see Blake v. Kemp, 758 F.2d 523, 533 (11th Cir. 1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. Strickland only requires that *Page 569 
counsel's actions fall within the wide spectrum of what can be considered reasonable assistance of counsel."
White v. Singletary, 972 F.2d 1218, 1224 (11th Cir. 1992). The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:
 "An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir. 1986). First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. Funchess v. Wainwright, 772 F.2d 683, 689-90 (11th Cir. 1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted."
Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir. 1988).
Applying the foregoing principles to the issue of whether Haas provided effective assistance of counsel at original sentencing, we conclude that the appellant's claim is without merit. Although the defense called only one witness at the sentencing hearing, that witness was Mrs. Hebert, the appellant's mother, who pleaded for the appellant's life. Mrs. Hebert had retained Haas, conferred with him at length, paid all his trial fees, and, by the time of sentencing, had exhausted her funds. The circuit court's sentencing order stated that "it is apparent to the court that [Mrs. Hebert] was devoted to [the appellant]."
Since Haas had spoken with Mrs. Hebert about the appellant and had observed by her words and actions that she appeared to be "devoted" to the appellant, we cannot fault Haas for failing to discover the appellant's "traumatic" childhood, in which, according to later testimony by Dr. Herlihy, Mrs. Hebert's "emotional rejection" of her son played a large part. CompareBertolotti v. Dugger, 883 F.2d 1503, 1520 (11th Cir. 1989) (defense counsel held to have provided effective assistance on claim that counsel overlooked or failed to investigate evidence of defendant's traumatic childhood, where counsel interviewed defendant's parents), cert. denied, 497 U.S. 1031,110 S.Ct. 3296, 111 L.Ed.2d 804 (1990). See also Beets v. Collins,986 F.2d 1478, 1488-89 (5th Cir. 1993) (although counsel did not "conduct a thorough investigation of [the defendant's] medical, mental, and psychological history," which would have revealed that the defendant "was raised in abject poverty, experienced a debilitating hearing loss, was afflicted with learning disabilities, had received head injuries as a child, and suffers from battered woman syndrome," the court observed that the defendant never gave her attorney "any hint that she had been abused by previous husbands or boyfriends. Neither [the defendant] nor any other member of her family ever conveyed to [the attorney] any information giving him reason to believe that she had a history of being physically abused."), rehearing granted, 998 F.2d 253 (5th Cir. 1993); Cantu v. Collins,967 F.2d 1006, 1016 (5th Cir. 1992) (despite fact that counsel failed to present evidence of defendant's "low IQ, emotional immaturity, troubled youth, trauma as a result of his parents' divorce, and appearance of neglect," court found that counsel had "thoroughly investigated these claims, consulting with his client as well as [client's] father and brother for possible mitigating evidence," and the claims were not supported in fact), cert. denied, ___ U.S. ___, 113 S.Ct. 3045,125 L.Ed.2d 730 (1993); Wilkerson v. Collins, 950 F.2d 1054, 1064-65 (5th Cir. 1992) (although attorney failed to discover or develop mitigating evidence that defendant had a "deprived family background," and psychological and mental "limitations," *Page 570 
the court observed that "trial counsel interviewed [the defendant], his mother, and other relatives. Neither [the defendant] nor his relatives were able to supply the names of potential defense witnesses. Investigation did not reveal reason to suspect that [the defendant's] mental capacity was in any fashion impaired."), cert. denied, ___ U.S. ___,113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); Thompson v. State,581 So.2d 1216, 1238 (Ala.Cr.App. 1991) (upholding circuit court's finding that counsel, who presented only the testimony of defendant's mother at sentencing, was not ineffective for failing to present evidence of the defendant's violent family background, addiction and substance abuse), cert. denied, 502 U.S. 1030,112 S.Ct. 868, 116 L.Ed.2d 774 (1992).
We hold that Haas was not ineffective at the original sentencing proceeding.
We also hold that Bertolotti was not ineffective at resentencing. First, we find that it was "reasonable considering all the circumstances," Strickland,466 U.S. at 688, 104 S.Ct. at 2065, for Bertolotti to decide that no new mitigating evidence was called for at resentencing because "Judge McRae had [in his original sentencing order] . . . been fairly generous in finding mitigating circumstances in Mr. Daniel's case." R. 199. Compare Porter v. Singletary,14 F.3d 554 (11th Cir. 1994) (although counsel at resentencing did
introduce further evidence in mitigation, trial court's original sentencing order had found no mitigation).
Second, it was reasonable for Bertolotti to conclude that "the best chance of helping [the appellant] involved attacking the aggravating circumstances." R. 196. Bertolotti had reviewed Haas's file on mitigation and knew what evidence had been introduced at the original sentencing proceeding. This Court has concluded that Haas's efforts did not result in ineffective assistance of counsel, and it was reasonable for Bertolotti to have assumed the same thing: that is, that the appellant's trial counsel had already presented the best, or the only, available mitigating evidence. Although "[t]he effectiveness of representation at the first sentencing hearing . . . does not fulfill the Constitutional requirement that [defendant] be assisted by counsel at his resentencing hearing," Tucker v.Day, 969 F.2d 155, 159 (5th Cir. 1992), we think the reasonableness of the first counsel's efforts has some bearing on the reasonableness of subsequent counsel's decision not to supplement those efforts.
This Court does not disregard the mitigating evidence that Rule 32 counsel managed to amass, or the opinion of Balske that Bertolotti's failure to investigate and to present that evidence was professionally unreasonable. However, we conclude that Bertolotti's decision not to present further evidence at resentencing was not outside the realm of reasonably competent counsel for one reason: Bertolotti's conclusion that this Court's remand order "did not by its terms, countenance acompletely new sentence hearing," R. 196 (emphasis added), was warranted by the wording of the order itself and by the Alabama case law on resentencing.
In Ex parte Cochran, 500 So.2d 1179, 1187 (Ala. 1985), the Alabama Supreme Court remanded the cause so that the trial court could hold a "new sentencing hearing, at which the trial judge is required to issue specific written findings on all evidence of mitigating factors." On remand to the circuit court, the defendant argued that "the Alabama Supreme Court [had] ordered that an entirely new sentencing hearing be held."Cochran v. State, 500 So.2d 1188 (Ala.Cr.App.) (on return to remand), affirmed, 500 So.2d 1064 (Ala. 1986), cert. denied,481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987). This Court acknowledged that the remand order was "ambiguous," but we concluded that the circuit court was correct when, disallowing further evidence, it stated:
 "The trial court does not construe the directions of the appellate courts to require additional investigation or the taking or seeking of further evidence. It is acknowledged by the appellate attorneys that in the trials of this case, reaching the sentencing phase, experienced criminal lawyers (one of whom [attorney John Carroll, now federal magistrate] is known nationwide for his representing capital case defendants) were involved. The transcript contains no request, by defendant's attorneys, *Page 571 
for further investigation, nor availability of further mitigating evidence, nor a continuance for such."
Cochran v. State, 500 So.2d at 1189.
The appellant insists that Bertolotti's testimony at the Rule 32 hearing that he made no "effort . . . to gather any mitigating evidence," for presentation at resentencing because he thought this Court's remand order "did not by its terms, countenance a completely new sentence hearing," R. 195-96, is inconsistent with Bertolotti's argument at the resentencing proceeding that the "case ha[d] been remanded for somethingmore than merely correction of the sentencing order," Remand Transcript at 4-5. However, those two statements are not necessarily contradictory.
The record of the remand proceeding shows that Bertolotti did think that the case had been returned for something more than mere correction of the court's sentencing order because Bertolotti argued that the "heinous, atrocious, and cruel" aggravating circumstance should not apply. This Court's directions to the circuit court on remand had not mentioned that aggravating circumstance as a part of the order that needed "correction" on remand. The fact that Bertolotti thought that a legal challenge to the existence of this aggravating circumstance was available on remand does not mean that he considered the case open for an entirely new evidentiary presentation.
After reviewing all of the issues raised by the appellant on this appeal, we find that the judgment of the circuit court denying his petition for post-conviction relief is due to be affirmed.
AFFIRMED.
All Judges concur.
[1] In reviewing the denial of the appellant's petition for post-conviction relief, this Court has reviewed the record of the appellant's 1978 capital murder trial. The trial record is designated as "T.R." The record of the post-conviction proceedings is designated as "R."
[2] "T.C.R." refers to the clerk's record in the appellate record of the appellant's 1978 capital murder trial.